*10*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
**FILED**

JAN 2 5 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| GERVAIS WAGNER, M.D. | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. B-00-189 |
| | § | |
| SOUTHWEST AIRLINES, CO. | § | |
| | § | |
| Defendant. | § | |

---

## DEFENDANT SOUTHWEST AIRLINES, CO.'S OPPOSITION
## TO PLAINTIFF'S MOTION FOR REMAND TO STATE COURT

---

William L. Maynard
Federal I.D. No. 1301
State Bar No. 13295500

**Attorney In Charge**

**OF COUNSEL:**
BEIRNE, MAYNARD & PARSONS, L.L.P.
John V. Treviño, Jr.
State Bar No. 24003082
Fed. I.D. No. 23860
Gerald J. Brown
State Bar No. 03126500
Fed. Id No. 1858
1300 Post Oak Boulevard, Suite 2400
Houston, Texas 77056
Telephone:  (713) 623-0887
Facsimile:  (713) 960-1527

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

A.    The Supremacy Clause of the United States Constitution. . . . . . . . . . . -2-

B.    The Supreme Court Has Acknowledged the Preemptive
Force of The Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

C.    The First and Third Circuits Have Both Held That The Act
Completely Preempts State Laws Relating to Air Safety. . . . . . . . . . . . -4-

    1.    The First Circuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

    2.    The Third Circuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

D.    The Fifth Circuit Has Noted But Not Ruled On The Preemptive
Effect of The Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

E.    A Uniform and Exclusive Federal Regulatory Scheme Exists for
Maintenance of Aircraft used by Common Carriers. . . . . . . . . . . . . . -7-

F.    The Fifth Circuit Has Held That Claims Arising under Federal
Common Law Create Federal Question Removal Jurisdiction. . . . . . . . . -9-

G.    Wagner's Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

# Table of Authorities

## Federal Cases

*Abdullah v. American Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999) . . . . . . . . . . . . 6

*Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S. Ct. 1854 (1973) . . . 4

*Cipollone v. Liggett, Inc.*, 505 U.S. 504, 112 S. Ct. 2608 (1992) . . . . . . . . . . . . . . 2

*Fidelity Federal Savings & Loan Association v. De la Cuesta*, 458 U.S. 141,
    102 S. Ct. 3014 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*French v. PanAm Express, Inc.*, 869 F.2d 1 (1st Cir. 1989) . . . . . . . . . . . . . . . 4, 5

*Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S. Ct. 1305 (1977) . . . . . . . . . . . . 2

*Nippon Fire & Marine Insurance Co. v. Skyway Freight Systems, Inc.*,
    235 F.3d 53 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 64 S. Ct. 950 (1944) . . . . . 3

*O'Carroll v. American Airlines, Inc.*, 863 F.2d 11 (5th Cir.), *cert. denied*,
    490 U.S. 1106 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pearson v. Duane*, 71 U.S. 605 (1866) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190 (9th Cir. 1999)  10

*Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922 (5th Cir. 1997) . . . . . . . . 3, 9

*Smith v. America West Airlines, Inc.*, 44 F.3d 344 (5th Cir. 1995) . . . . . . . . . . . 7

*Williams v. Trans World Airlines, Inc.*, 369 F. Supp. 797 (S.D.N.Y. 1974),
    *aff'd*, 509 F.2d 942 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **Statutes**

14 C.F.R. § 119.5(b) ................................................... 7

14 C.F.R. Part 121 L ................................................... 8

49 U.S.C. § 41101(a) ................................................... 7

U.S. Const. art. VI, cl. 2 ................................................... 2

TO THE HONORABLE HILDA G. TAGLE:

Defendant Southwest Airlines, Co. ("Southwest") hereby files its

Opposition to Plaintiff's Motion for Remand to State Court ("Motion").

## Introduction

Plaintiff herein, Gervais Wagner, M.D., seeks a recovery of damages from

Southwest based upon allegations of "negligent maintenance." Plaintiff alleges

Southwest's "negligent maintenance" caused a high pitched "continuous noise" in

flight which caused Plaintiff to suffer an ear injury.

Southwest removed this matter to Federal Court asserting Federal Question

Jurisdiction. The authorities set out and discussed hereinbelow clearly

demonstrate that the United States Congress, through the enactment of the Federal

Aviation Act of 1958 (the Act) and numerous regulations implementing the Act,

has evidenced its preemptive intent by promulgating a <u>uniform and exclusive</u>

system of Federal Regulations for aviation. There can be no doubt that this

<u>uniform and exclusive</u> regulatory scheme covers maintenance for aircraft used by

common carriers. Plaintiff's claims require interpretation and application of

federal statutes and regulations governing aircraft safety, service and maintenance.

The interpretation of these federal statutes and regulations is exclusively within

the province of the Federal Court system, necessarily involving issues of federal

common law, to the exclusion of state law standards and interpretations.

267789.1                           -1-

Accordingly, Plaintiff's motion to remand should be denied.

## Argument

**A.     The Supremacy Clause of the United States Constitution.**

The power of Congress to preempt state law originates from the Supremacy Clause of Article VI of the Constitution. The Supremacy Clause makes the laws of the United States "the Supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Under our federalist system, the states' historic police powers are superseded by federal law when it is the "clear and manifest purpose of Congress." *Cipollone v. Liggett, Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 2617 (1992).


In evaluating the preemptive scope of a federal law, a court must consider the legislature's purpose.  Congress's intent to preempt state law can either be "explicitly stated in the statute's language or implicitly contained in the structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977).  Federal law preempts state law when federal law so thoroughly occupies a legislative field "as to make reasonable the inference that Congress left no room for the State to supplement it." *Fidelity Federal Savings & Loan Association v.*

*De la Cuesta*, 458 U.S. 141, 153, 102 S. Ct. 3014, 3022 (1982) (internal quotation marks omitted).

**B.      The Supreme Court Has Acknowledged the Preemptive Force of The Act.**

Every single aspect of aviation in this country – especially those aspects relating to safety – is controlled by the Federal Aviation Administration (hereinafter "the FAA") through regulations it has enacted pursuant to the Act.  As Mr. Justice Jackson cogently observed more than half a century ago, even before enactment of the Act:

> Congress has recognized the national responsibility for regulating air commerce.  *Federal control is intensive and exclusive*.  Planes do not wander about in the sky like vagrant clouds.  They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands.  The moment an airplane taxis onto a runway it is caught up in an elaborate and detailed system of controls . . . . *Its privileges, rights, and protection, so far as transit is concerned, is owed to the Federal Government alone and not to any state government.*

*Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 303, 64 S. Ct. 950, 956 (1944) (emphasis supplied).  The Fifth Circuit has recognized that the Act created "a more comprehensive regulatory regime" than did the prior Civil Aeronautics Act, adopted in June 1938.  *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 926 n.7 (5th Cir. 1997).

The Supreme Court acknowledged the preemptive force of the Act in *Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624,639, 93 S. Ct. 1854, 1862 (1973), noting that "a uniform and ***exclusive*** system of federal regulation" is required "if the congressional objectives underlying the [Act] are to be fulfilled." (Emphasis supplied.) There, the Court held unconstitutional on preemption grounds a municipal ordinance that made it unlawful for jet aircraft to take off from the Hollywood-Burbank Airport between 11 p.m. and 7 a.m. The Court noted that the Act gave the FAA broad authority to regulate the use of applicable airspace in order to ensure the safety of aircraft and the efficient utilization of such airspace. 411 U.S. at 627 93 S. Ct. at 1856. Consequently, the Court held the municipal ordnance preempted even though "[c]ontrol of noise is of course deep-seated in the police power of the States." By contrast, the case at bar involves the maintenance and inspection of aircraft flown by common carriers – an area that has been exclusively regulated by the federal government since the inception of modern commercial aviation.

**C.     The First and Third Circuits Have Both Held That The Act Completely Preempts State Laws Relating to Air Safety.**

*1.     The First Circuit*

The First Circuit undertook a searching analysis of the Act's preemptive effect as it concerns air safety in *French v. PanAm Express, Inc.*, 869 F.2d 1 (1st

Cir. 1989), a federal question removal case. *French* involved the issue of drug

testing of pilots suspected of drug use. After a thorough analysis of the relevant

provisions of the Act, the court concluded:

> The intricate web of statutory provisions affords no room
> for the imposition of state law criteria *vis-a-vis* pilot
> suitability. We therefore conclude, without serious
> question, that preemption is implied by the comprehensive
> legal scheme which imposes on the Secretary of
> Transportation the duty of qualifying pilots for air service.

*French*, 869 F.2d at 4.

The *French* court also examined the legislative history underlying the

original Act and noted that it "stressed the importance of the single uniform

system of regulation, especially with regard to air safety." *French*, 869 F.2d 5.

The court further noted that "The House Report explained, in a section entitled

'Purpose of Legislation,' that '[t]he administration of the New Federal Aviation

Agency (1) would be given *full responsibility and authority* for the . . .

promulgation and enforcement of safety regulations. . . .'" *Id.*

After analyzing both the scope of the act and its legislative history, the

Court concluded: "In sum, establishment of the single uniform system of

regulation in the area of air safety was one of the primary 'object[s] sought to be

obtained' by passage of the Act." *French*, 869 F.2d at 5, quoting *Schneidewind v.*

*ANR Pipeline Co.* 485 U.S. 293, 300, 108 S. Ct. 1145, 1150 (1988). The Court

further held that, because Congress had completely occupied the area of airline safety, state laws attempting to regulate within the field were invalid even if consistent with substantive federal policies. "The federal interest necessarily predominates, rendering States impotent to act." *Id.* at 6.

2.   *The Third Circuit*

In *Abdullah v. American Airlines, Inc.*, 181 F.3d 363,367 (3d Cir. 1999), the Third Circuit held that the Act, along with the accompanying regulations promulgated by the FAA, preempts the ***entire field of aviation safety*** because they "establish complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, jurisdictions." The Court held that, by enacting the Act, Congress intended to vest "sole responsibility for supervising the aviation industry" with the federal government. *Id.* at 368.

Plaintiffs in *Abdullah* sued American Airlines for serious injuries they suffered when the aircraft they were on encountered severe turbulence. Plaintiffs alleged negligence on the part of the pilot and flight crew in failing to take reasonable precautions to avoid the turbulent conditions and for failing to give warnings to plaintiffs, which would have allowed them to take steps to protect themselves. *Id.* at 365. Although the plaintiffs asserted only common law claims,

the Court held "federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation." *Id.* at 367.

**D.     The Fifth Circuit Has Noted But Not Ruled On The Preemptive Effect of The Act.**

Although the Fifth Circuit has recognized that "the pervasive breath of the Act . . . would tend to indicate congressional preemptive intent . . . ." *O'Carroll v. American Airlines, Inc.,* 863 F.2d 11, 13 (5th Cir.), *cert. denied,* 490 U.S. 1106 (1989), the Court has specifically reserved  the question whether FAA safety regulations preempt common law negligence claims. *See Smith v. America West Airlines, Inc.,* 44 F.3d 344,347n2 (5th Cir. 1995) (*en banc*).

**E.     A Uniform and Exclusive Federal Regulatory Scheme Exists for Maintenance of Aircraft used by Common Carriers.**

The Act, with its intricate web of statutory provisions and attendant regulations, affords no room for imposition of state law criteria in the area of inspection, maintenance, and repair of aircraft.  49 U.S.C. §§ 41101(a) states that an air carrier may provide air transportation only if the air carrier holds a certificate authorizing the air transportation.  In the same vein, 14 C.F.R. § 119.5(b) requires that all persons authorized to conduct operations as a U.S. commercial operator be issued an Operating Certificate.

Commercial passenger carriers, such as Southwest, are governed by 14

C.F.R. part 121.  Subpart L of part 121, entitled "Maintenance, Preventive

Maintenance and Alterations" contains detailed requirements for the maintenance

of Southwest's aircraft, some of which are set forth at Tab 1 of the Appendix to

this response.  As the Court will see, these regulations govern every facet of

airline maintenance and inspection.

Moreover, when Congress amended the Act in 1996, it made Findings that

are included at Tab 2 of the Appendix.  Those Findings include the following:

> (1)   The FAA is recognized throughout the world as a
>        leader in aviation safety;
>
>                          * * *
>
> (3)   The FAA certifies more than 650 training schools
>        for pilot and non-pilots, more than 4,858 repair
>        stations, and more than 193 maintenance schools;
>
>                          * * *
>
> (7)   The FAA each year performs more than 355,000
>        inspections;
>
> (8)   The FAA issues more than 655,000 pilots' licenses
>        and more than 560,000 non-pilots licenses
>        (including mechanics);
>
> (9)   The FAA's certification means that the product
>        meets world-wide standards of safety and reliability;
>        and

(10)   The FAA's certification means aviation-related equipment and services meet worldwide recognized standards.

These Findings confirm that the federal government, through the FAA, comprehensively regulates airline safety, maintenance, and inspection.

**F.   The Fifth Circuit Has Held That Claims Arising under Federal Common Law Create Federal Question Removal Jurisdiction.**

Removal is also appropriate because Wagner's claims arise under federal common law.  The application and interpretation of federal statutes and regulations necessarily involve concepts of federal common law, not state common law.  The Fifth Circuit held that claims arising under federal common law create federal question removal jurisdiction in *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922 (5th Cir. 1997).  There, the plaintiff contracted with the defendant to transport three shipments of jewelry from Texas to New York.  The three shipments were not received by the addressee in New York, and plaintiff sued to recover the value of the goods in Texas state court, alleging breach of contract, negligence, and violations of the Texas deceptive trade practices statute. The defendant removed the action to federal district court, asserting that the plaintiff's claims were governed by federal law.  The district court granted summary judgment to defendant.

The Fifth Circuit held that the plaintiff's claims arose under federal common law, thereby supplying the Court with jurisdiction. *Id.* at 929. This was true even though Plaintiff's claims were not completely preempted by the Airline Deregulation Act. *Id.* at 925-26. The Court noted that the Civil Aeronautics Act, adopted in June 1938, contained a clause that preserved remedies "now existing at common law or by statute. . . ." *Id.* at 926. The Court concluded that this savings provision probably preserved a federal common law cause of action similar to the one before it. *Id.* at 927. The Court, however, held that federal common law has developed, and is saved by acts of Congress, referring to the Act and the Airline Deregulation Act of 1978. *Id.* at 927-28.

Thus, the savings clause on which Wagner relies on page two of his Motion preserved ***federal*** common law claims, and the federal common law claims that he seeks to assert provide federal question subject matter jurisdiction. The Second and Ninth Circuits have also held that federal common law governs such claims. *See Nippon Fire & Marine Ins. Co. v. Skyway Freight Systems, Inc.*, 235 F.3d 53 (2d Cir. 2000); *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1196 (9th Cir. 1999).

Federal common law has been applied to common carriers of passengers for well over a century. *See Pearson v. Duane*, 71 U.S. 605, 615 (1866). After the

airplane was invented, the Court applied federal common law to passenger

airlines. *See Williams v. Trans World Airlines, Inc.*, 369 F. Supp. 797 (S.D.N.Y.

1974), *aff'd,* 509 F.2d 942 (2d Cir. 1975). Thus, the savings clauses contained in

the Federal Aviation Act and the Airline Deregulation Act had the effect of

preserving the established federal common law cause of action against air carriers

for failing to protect the safety of their passengers. The claims that Wagner seeks

to assert in this case are necessarily federal in character.

## G.     Wagner's Motion.

Wagner's motion is remarkable for what it fails to address. First and

foremost, Wagner's motion fails to address the preemptive effect of the Act.

Wagner's entire "discussion" of the Act is found in the following sentence: "The

Federal Aviation Act of 1958 contained a savings clause and did not afford

preemption." Wagner's motion fails to analyze the Act's savings clause, and fails

even to cite, let alone distinguish, decisions that have held the Act preempts state

law tort claims.

Second, Wagner's motion fails to mention the host of regulations

promulgated by the Federal Aviation Administration pursuant to the Act. These

comprehensive regulations have been discussed above. Finally, Wagner's motion

fails to acknowledge that state law claims are converted into federal law claims once complete federal preemption is found.

### Conclusion

The authorities set out and discussed herein clearly demonstrate that federal question jurisdiction exists for this case. Plaintiff's Motion to Remand is non-meritorious and should be denied.

Respectfully submitted,

William L. Maynard
Federal I.D. No. 1301
State Bar No. 13295500

### Attorney In Charge

OF COUNSEL:
BEIRNE, MAYNARD & PARSONS, L.L.P.
John V. Treviño, Jr.
State Bar No. 24003082
Fed. I.D. No. 23860
Gerald J. Brown
State Bar No. 03126500
Fed. Id No. 1858
1300 Post Oak Boulevard, Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEYS FOR DEFENDANT,
SOUTHWEST AIRLINES, CO.**

## CERTIFICATE OF SERVICE

I hereby certify the foregoing instrument has been served via certified mail, return receipt requested, on all known counsel of record on the ___24th___ day of January, 2001, as follows:

B. Buck Pettitt

FLORES, CASSO & PETTITT, LLP

321 South 12th Street

P. O. Box 2128

McAllen, Texas 78505-2128

William L. Maynard

267789.1                                       -13-

# Appendix

CVitPDF – www.fastio.com

# 14 C.F.R. Part 121 L

• 14 C.F.R. § 121.369(b) requires each certificate holder to have a manual that "must contain the programs required by § 121.367 that must be followed in performing maintenance, preventive maintenance and alterations of that certificate holder's airplanes, including airframes . . . ." The certificate holder's manual must include at least the following:

(1) The method of performing routine and nonroutine maintenance (other than required inspections), preventive maintenance, and alterations.

(2) A designation of the items of maintenance and alteration that must be inspected (required inspections), including at least those that could result in a failure, malfunction, or defect endangering the safe operation of the aircraft, if not performed properly or if improper parts or materials are used.

(3) The method of performing required inspections and a designation by occupational title of personnel authorized to perform each required inspection.

(4) Procedures for the reinspection of work performed pursuant to previous required inspection findings (*buy-back procedures*).

(5) Procedures, standards, and limits necessary for required inspections and acceptance or rejection of the items required to be inspected and for periodic inspection and calibration of precision tools, measuring devices, and test equipment.

267789.1

CutePDF - www.hawisa.com

(6)     Procedures to ensure that all required inspections are performed.

In addition:

- 14 C.F.R. § 121.373(a) requires each certificate holder, including Southwest, to "establish and maintain a system for the continuing analysis and surveillance of the performance and effectiveness of its inspection program and the program covering other maintenance, preventive maintenance, and alterations and for the correction of any deficiency in those programs, regardless of whether those programs are carried out by the certificate holder or by another person.

- C.F.R. § 121.373(b) provides that whenever the Administrator finds that either or both of the programs described in paragraph 121.373(a) does not contain adequate procedures and standards to meet the requirements of part 121, "the certificate holder shall, after notification by the Administrator, make any changes in those programs that are necessary to meet those requirements."

- 14 C.F.R. § 121.371 prohibits Southwest from using any person to perform required inspections "unless the person performing the inspection is appropriately certificated, properly trained, qualified, and authorized to do so."

- 14 C.F.R. § 121.378(a) requires each person who is directly in charge of maintenance, preventive maintenance, or alteration and each person performing required inspections to hold an appropriate airman's certificate.

267789.1                                    -2-

•       14 C.F.R. § 121.383 states that "No certificate holder may use any person as an airman nor may any person serve as an airman unless that person — (1) holds an appropriate current airman's certificate issued by the FAA."

The regulations set forth above, which deal with the maintenance and inspection of aircraft, are but a small subset of the myriad regulations promulgated by the FAA, which govern every facet of airline safety. The FAA approves the designs of aircraft as well as their maintenance procedures. The FAA licenses the mechanics who work on aircraft and the locations at which the work is performed. It also licenses the pilots who fly the aircraft.

System to Fund Certain Federal Aviation Administration Functions; Congressional Statement of Findings

Pub.L. 104-264, Title II, § 271, Oct. 9, 1996, 110 Stat. 3238, provided that:  "Congress finds the following:

"(1) The Administration is recognized throughout the world as a leader in aviation safety.

"(2) The Administration certifies aircraft, engines, propellers, and other manufactured parts.

"(3) The Administration certifies more than 650 training schools for pilots and nonpilots, more than 4,858 repair stations, and more than 193 maintenance schools.

"(4) The Administration certifies pilot examiners, who are then qualified to determine if a person has the skills necessary to become a pilot.

"(5) The Administration certifies more than 6,000 medical examiners, each of whom is then qualified to medically certify the qualifications of pilots and nonpilots.

49 USCA S 40101

"(6) The Administration certifies more than 470 airports, and provides a limited certification for another 205 airports. Other airports in the United States are also reviewed by the Administration.

"(7) The Administration each year performs more than 355,000 inspections.

"(8) The Administration issues more than 655,000 pilot's licenses and more than 560,000 nonpilot's licenses (including mechanics).

"(9) The Administration's certification means that the product meets world- wide recognized standards of safety and reliability.

"(10) The Administration's certification means aviation-related equipment and services meet world-wide recognized standards.

"(11) The Administration's certification is recognized by governments and businesses throughout the world and as such may be a valuable element for any company desiring to sell aviation-related products throughout the world.

"(12) The Administration's certification may constitute a valuable license, franchise, privilege or benefits for the holders.

"(13) The Administration also is a major purchaser of computers, radars, and other systems needed to run the air traffic control system. The Administration's design, acceptance, commissioning, or certification of such equipment enables the private sector to market those products around the world, and as such confers a benefit on the manufacturer.

"(14) The Administration provides extensive services to public use aircraft."